No. 23,591.

FAIRBANKS, MORSE & COMPANY, *Appellant*, v. THE FARMERS UNION ELEVATOR COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

CONTRACT—*Machinery for Grain Elevator—Contract Not Made or Authorized by Defendant*. A building contractor entered into a written contract with the defendant to build a grain elevator and equip it with certain machinery for a stated price. The contractor gave an order to the plaintiff for the machinery, signing the defendant's name thereto, by himself. The plaintiff endeavored unsuccessfully to get defendant to assume liability for the payment for the machinery. Defendant wrote plaintiff stating that it had agreed to pay the contractor for the building and equipment and would be ready to take up the bills as they came. Notwithstanding this, plaintiff afterwards shipped the machinery consigned to defendant, who paid the freight and turned the machinery over to the contractor. Defendant paid out on claims against the building the full contract price. In an action to recover the price of the machinery, *held*, under the circumstances

and the facts about which there is no dispute, defendant was not liable to plaintiff.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed March 11, 1922. Affirmed.

*W. S. Kretsinger,* of Emporia, and *William C. Forsee,* of Kansas City, Mo., for the appellant.

*J. P. McLaughlin,* of Osage City, and *R. M. Hamer,* of Emporia, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant is a corporation formed by a number of farmers for the purpose of building and operating a grain elevator at the town of Allen in Lyon county. A committee visited Kansas City to get prices on steel bins, scales and other machinery from Fairbanks, Morse & Company, the plaintiff, whose business manager advised them to have a written contract for the erection of the elevator and recommended F. W. Lehrack as a responsible contractor. He endeavored to bring about a meeting between the committee and Mr. Lehrack, but was unable to do so, and the committee went home. A few days later Lehrack went to Allen and a contract was drawn up and signed on May 28, 1919, by which he was to build and equip the elevator for a consideration of $8,234.55. Lehrack returned to Kansas City and on May 29 gave a written order to the plaintiff for the machinery, which he signed "Purchaser, Farmers Union Elev. Co., By F. W. Lehrack."

Before accepting the order the credit manager of the plaintiff wrote to the defendant stating that the order had been given "us by F. W. Lehrack for shipment and to be charged to your account" and inclosed a blank property statement with a request that it be signed and returned together with names of persons from whom the defendant had formerly purchased goods, in order that the plaintiff might determine whether to extend the credit. The defendant sent the statement back indorsed as follows:

"In regard to order, we are building elevator. Mr. F. W. Lehrack has the contract.

"We are to pay him for building and equipping same with the 15 H. P. Z type engine.

"We are not fully organized yet but have fully arranged for capital to put up building.

"We will be ready to take up the bills as they come.

"The firm name is correct though we have not the charter yet but expect to have it soon.

"At present we have charter for Farmers Union Cooperative Co."

Apparently this was not satisfactory to the credit manager and on June 2 he wrote referring to his previous letter "and your order of May 27 for 15 H. P. engine, which order was given us by F. W. Lehrack." Attached to the letter was the original order signed by Lehrack, and defendant was requested to have it signed under Lehrack's name by the party authorized to sign for the elevator company. The letter was never answered nor was the Lehrack order returned to the plaintiff. On June 13 the company wrote send-ing a copy of their former letter and asked that it be answered and that the Lehrack order be returned. Defendant made no reply to this letter. On June 16, 18, 20 and 26 the plaintiff shipped the machinery to the defendant as consignee. The defendant paid the freight, accepted the machinery and turned it over to the contractor. Thereafter the plaintiff, in numerous letters, requested payment of the $1,383, which was the purchase price of the machinery. On August 4 the defendant wrote plaintiff as follows:

"In reply to bill ordered by Mr. Lehrack for Elevator. We were up to 90 per cent as fast as work was done. I am writing Mr. Lehrack today to go over and see you in regard to it. I am sending you $500 today."

On September 28 defendant wrote requesting a statement of all goods bought by Lehrack for the Allen elevator company and stated:

"We want to get it settled this week if we can. We are trying to get him out so he can at least get all bills in he could not pay so we will know just what to do. . . . We will do the best we can for him if you would insist on him coming out it may do some good. But make all invoices at once."

After defendant refused to make any further payment on the ac-count, this action was brought to recover the balance of $883.

The court submitted to the jury the sole question whether the de-fendant, before the action was brought, had paid out the full amount of the contract price to Lehrack. The jury answered this question in the affirmative and the court thereupon directed judgment for the defendant.

The testimony of plaintiff's credit manager is that he relied upon Lehrack's statement as to his authority to charge the goods to the defendant. He testified:

"I asked him (Lehrack) whether he was authorized to sign the name of defendant to these orders and he said he was. I did not ask him to produce the authority because we had similar or other cases of exactly the same nature. This was not necessary. I took his word for it. I had dealt with Mr. Lehrack possibly two or three times before that and I believed what he said. I did

not inquire from him if he had any contract with the defendant because I was not interested in the contract. . . . My company had been doing business with him two years to my knowledge."

The secretary of the elevator company testified that he sent the $500 payment to plaintiff at the request of Lehrack's foreman of construction.

The principal contention of the plaintiff is that the defendant is liable on the law and the evidence. In this contention we cannot concur. It is not claimed that there was an express contract, and under the facts and circumstances, about which there is no dispute in the evidence, it cannot be said there was an implied contract to pay. The testimony of the credit manager of the plaintiff shows that he was not satisfied with the representations made by Lehrack, and attempted by correspondence with the defendant to get the latter to acknowledge in writing the authority of Lehrack to sign the name of the elevator company to the contract or to obtain an acknowledgment of defendant's liability. Long before any of the goods were shipped he knew that the elevator company had declined to do this. He had their letter stating the material parts of the contract between the company and Lehrack. The statement was that "we are to pay him for building and equipping same with the 15 H. P. Z type engine. . . . We will be ready to take up the bills as they come." This was notice of the fact that no bills would be paid unless satisfactory to and authorized by Lehrack. The credit manager's subsequent efforts to secure a written acknowledgment of defendant's liability establishes conclusively that the plaintiff did not regard anything said in this statement as sufficient to bind the defendant to pay. The plaintiff knew before any of the goods were shipped that it could not rely upon any agreement by the elevator company to become responsible for the purchase price. With full knowledge of these facts, it could not by the mere shipment of the goods to the elevator company rely upon an implied contract binding the defendant.

There are cases, it is true, which hold that one who ships goods to another may acquire the right to treat him as a buyer because of his failure to notify the sender to the contrary. But this rule is not an arbitrary one and depends upon the relations between the parties and the circumstances. The circumstances under which the goods were shipped to the defendant in the present case were not sufficient, in our opinion, to require the defendant to refuse to ac-

cept the goods when they arrived. It was at the suggestion of the plaintiff that the contract was made with Lehrack to build the elevator. The testimony of the credit manager shows that Lehrack was not asked to produce any authority to purchase in the name of the defendant because of transactions of the same kind they had had with him before. There being no disputed fact to submit to the jury, the court properly directed a verdict against the plaintiff.

The judgment is affirmed.